**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| PAN AMERICAN GRAIN COMPANY INC.; PAN AMERICAN GRAIN MANUFACTURING CO., INC.<br><br>        **Plaintiff,**<br><br>                v.<br><br>BERGE BULK SHIPPING PTE. LTD.; WESTERN BULK CARRIERS AS; SAKAE SHIPPING S.A.; NORTH OF ENGLAND CLUB U.K. LTD.<br><br>        **Defendants** | Civil No. 2023cv-01581<br><br>In Admiralty |

**MOTION TO DISMISS FOR LACK OF JURISDICTION
AND FOR FAILURE TO STATE A CLAIM UPON
WHICH RELIEF CAN BE GRANTED**

**TO THE HONORABLE COURT:**

COME NOW CROSS DEFENDANTS WESTERN BULK CARRIERS AS ("WBC"), and NORTH OF ENGLAND CLUB ("North of England") (collectively "defendants" or "appearing parties") and respectfully state and pray as follows:

**I.    INTRODUCTION**

The plaintiffs[1] amended their complaint to include the appearing parties, WBC, an entity from Oslo, Norway, and North of

---

[1] Pan American Grain Company, Inc. and Pan American Grain manufacturing Co. Referred to throughout this motion as "PAG" or the "plaintiffs".

England, an entity from England. The original Complaint and the First Amended Complaint filed by Plaintiffs are based on torts (negligent acts or omissions), seeking damages, legal fees, and costs in a jurisdiction where the appearing parties have no ties, contacts or place of business.

After the appearing parties filed a dispositive motion, Codefendants Sakae Shipping S.A. (Sakae) and The Standard Club Cub Uk LTD (The Standard) filed a Crossclaim against them based on an alleged safe port/safe berth contractual clause. The appearing parties have not signed any contract with Sakae. Sakae did not serve process on the appearing parties.

After Sakae's Crossclaim was filed, the Plaintiffs filed for the voluntary dismissal of their complaint against the appearing parties without prejudice. This Court dismissed the Complaint as to the appearing parties without prejudice.

The appearing parties request the dismissal of Sakae's Crossclaim under Fed. R. Civ. P 12(b)(2) for lack of personal jurisdiction. None of the appearing defendants are subject to this Court's general or specific jurisdiction. Personal jurisdiction is absent because the appearing parties lack sufficient minimum contacts with Puerto Rico. Because there are no contacts with Puerto Rico, the alleged acts or omissions of the appearing parties and the absence of a contract that submits WBC to this jurisdiction fail to satisfy the long-arm statute and

constitutional notions of minimum contacts. On the contrary, **WBC has only agreed to mandatory arbitration under English Law in London in its charter party with the Plaintiffs.**

WBC does not have offices, employees, or bank accounts, nor does it conduct business in Puerto Rico. Id. It has no telephone number, mailing address, bank account, or property in Puerto Rico. Exhibit B, Rodríguez Decl., p. 2; They have no relationship or contacts or business of any kind in Puerto Rico, whether personally or through any sales agent. Id. They have no other lawsuits pending in Puerto Rico. Id. The only contact at all was the charter party agreement executed with the Plaintiffs. WBC had no anticipation that it would be tasked with the burden of defending itself in Puerto Rico, especially when they expressly agreed that any controversy regarding the charter party would be resolved in London. Neither it anticipated to defend itself in Puerto Rico for alleged acts or omissions because WBC did not participate in the navigation, management or manning of the vessel that allegedly allided with PAG's marine tower. Id. In addition, the parties that provided the facilities and were obligated to provide a safe berth were the plaintiffs, not WBC. It would be an enormous burden on WBC or Nort of England, defendants from England and Norway, to defend themselves from litigation in Puerto Rico. Id.

The appearing parties have no meaningful ties or relations

with Puerto Rico capable of constituting the required minimum contacts under the law to allow this

Court to exercise jurisdiction over their person.

Also, it is the appearing parties position that Sakae's Crossclaim fails to state a cause of action. As mentioned above, WBC was neither the operator of the vessel nor the owner/operator of the berthing facilities. At all times, Sake had full control of the vessel. As the owner, operator, and contractual vessel charterer, PAG guaranteed its facilities' safety and fitness.

## II. Procedural and Factual Background

1. The Plaintiffs commenced the present action by filing a Complaint and a First Amended Complaint (Docket #1 and #7).

2. According to the First Amended Complaint ("hereafter, "Complaint"), the Plaintiffs are the operators of a "specialized" marine terminal and the owners of a marine tower used for the unloading of grain situated at the Pan American Grain Terminal in Guaynabo, Puerto Rico. (Paragraphs 3 and 12 of the Complaint).

3. According to the Complaint, on November 20, 2022, the M/V BERGE SCAFELL PIKE (hereafter "the Vessel"), struck and allided the marine tower while conducting a shifting maneuver, causing damage to the tower, specifically to the marine leg and other parts and structures. (Paragraph 12 of the Complaint).

4. Defendant Cross claimant Sakae is the registered owner of the Vessel and is engaged in the business of commercial cargo

transportation. (Docket #7, paragraph #11, Docket #15, paragraph #4, and Docket #44, paragraph #1 of section II.).

5.    The plaintiffs included the appearing parties[2] as defendants in Complaint (Docket #7).

6.    In the Complaint, it was alleged that WBC entered into a charter party agreement with the Plaintiffs to transport soya bean meal and soya hull pellets from Argentina to San Juan, Puerto Rico. (Docket #7, paragraph 10, and Sakae's Crossclaim at Docket #44). Furthermore, it is alleged that WBC nominated the vessel for the voyage from Argentina to San Juan. (Docket #7)

7.    The Plaintiffs notified requests to waive the service of summons, which were voluntarily returned and signed by the appearing parties.

8.    The appearing parties filed a Motion to Stay or in the Alternative to Dismiss (Docket#31), which was opposed by the Plaintiffs (Docket #40) and replied to by the appearing parties (Docket #46).

9.    In the Motion to Stay or Dismiss, the appearing parties acknowledged to have entered into an *American Grain Charterparty 1973* with the Plaintiffs, executed on August 4, 2022 (hereafter, we refer to this agreement as the "Charter party").

10.    Said Charter Party (included in the record as Docket #

---

[2] WBC was included as a party participating in the business described in the Complaint, and North of England as its insurer.

) contains an arbitration clause with a selection of applicable law (English Law) forum clauses (arbitration in England).

11.  Codefendants Sakae and The Standard <u>filed a Crossclaim</u> against the appearing parties claiming they are the beneficiaries of an alleged safe port/safe berth contractual clause (Docket #44).

12.  <u>Of importance is that Sakae's crossclaim against the appearing parties does not plead any specific grounds for jurisdiction. Also, it is important to consider that the appearing parties have not signed a contract with Sakae, and Sakae did not serve process on them</u>.

13.  After Sakae's Crossclaim was filed, the Plaintiffs filed for the voluntary dismissal of their complaint against the appearing parties without prejudice, and this Court dismissed the Complaint as to the appearing parties without prejudice (Dockets #49 and 51).

14.  The result of the above is that the only action pending against the appearing parties is a Crossclaim filed by the entity that navigated, managed and manned the vessel involved in the accident.

### III. DISCUSSION AND ANALYSIS

The appearing parties submit that the Crossclaim should be dismissed for lack of personal jurisdiction and/or failure to state a valid cause of action.

A. Applicable Legal Framework

Under Fed. R. Civ. P. 12(b)(2), a defendant Cross defendant here) may request dismissal of an action asserted against it for lack of personal jurisdiction. Since federal courts have limited jurisdiction, the party asserting jurisdiction has the burden of demonstrating that jurisdiction exists. See, United States v. Swiss Am. Bank, Ltd., 274 F. 3d 610, 618 (1st Cir. 2001). Hence, "[w]henever the plaintiff fails to meet the burden of establishing a prima facie case of personal jurisdiction, a defendant can move to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(2)." Canatello v. Nuvico, Civil No. 12-1430 (JAG), 2013 WL 4546017 *1 (D.P.R. August 27, 2013).

As stated above, cross-claimant Sakae failed to properly plead the jurisdictional basis for its crossclaim by only stating:

> 1. To the extent that this Court determines that it has jurisdiction over the First Amended Complaint filed by Pan American Grain pursuant to 28 U.S.C. § 1333, it also has jurisdiction over this Crossclaim since the claims asserted in this Crossclaim are related to the pending claims against the appearing parties and the other defendants in the action.

> 2. To the extent that this Court determines that venue is proper for events giving rise to the First Amended Complaint filed by Pan American Grain under 28 U.S.C. § 1391, it is also proper for the present Counter-Crossclaim.

Courts have used the "prima facie standard" to assess whether a plaintiff has met its burden to justify the exercise of personal

jurisdiction in Puerto Rico over the defendants.  Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675-76 (1st Cir. 1992), A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016) (explaining that the plaintiff bears the burden to establish that personal jurisdiction exists over the defendant). Under this standard, a district court "consider[s] only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." Boit, 967 F.2d at 675. "To make a prima facie showing of this calib[er], the plaintiff ordinarily cannot rest upon the pleadings, but is obliged to adduce evidence of specific facts."  Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995) (citing Boit, 967 F.2d at 675), as cited in PREP Tours, Inc. v. American Youth Soccer Organization, 913 F.3d 11 (2019).

It is axiomatic that the plaintiffs bear the burden of establishing that this Court has personal jurisdiction over a non-resident defendant, like the moving cross defendant in this case. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F. 3d 42, 50 (1st Cir. 2002); Boit v. Gar-Tec Products, Inc., 967 F. 2d 671, 675 (1st Cir. 1992). For plaintiffs to carry their heavy burden, they must proffer evidence that, if this Court gives it credit, will support findings as to every fact required to make a showing that the exercise of personal jurisdiction over the non-resident defendant is authorized by the forum's long-arm statute

and the Due Process Clause of the US Constitution. Id; Swanson v. Coffeen, 952 F. Supp. 2d 390, 393 (D.P.R. 2013). The Due Process Clause protects non-resident from being haled into courts in states where they have "established no meaningful 'contacts, ties or relations.'" Burger King, 471 U.S. at 472 (quoting International Shoe, 326 U.S. at 319.

In its Crossclaim, Sakae failed to allege the jurisdictional basis for its claim properly. The First Amended Complaint against the appearing parties was dismissed. The appearing parties' position is that Sakae's jurisdiction allegations were insufficient when pleaded, and now that the First Amended Complaint against the appearing parties has been dismissed, they are totally missing.

If this Court determines not to dismiss the Crossclaim due to its prima facie deficiencies, then it should be dismissed due to the following.

**1. Personal Jurisdiction**

It is an anchoring principle that "[p]ersonal jurisdiction refers to a court's power to exercise authority over a person or entity under both the forum's long-arm statute and the Due Process Clause of the Fourteenth Amendment." Estate of Rosario v. Falken Tire Corp., Civil No. 14-1505 (FAB), 2015 WL 3764512 *5 (D.P.R. June 17, 2015). In the instant case, given that "Puerto Rico's long-arm statute extends jurisdiction to the maximum limits

imposed by the Constitution, the due process analysis is determinative." *Id* (citing Negrón-Torres v. Verizon Communications, Inc., 478 F. 3d 19, 24 (1st Cir. 2007)). Hence, the analysis in this case must center on whether Due Process would permit the Court to assert jurisdiction over WBC.

In this respect, "[t]he Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." Burger King Corp. v. Rudzewicz, 471 U.S.462, 471-472, 105 S. Ct. 2174 (1985) (citing International Shoe Co. v. Washington, 326 U.S. 310, 319, 66 S. Ct. 154 (1945)). As such, "[a] court is without authority to adjudicate a case when it has no personal jurisdiction over the parties." Ingeniador, LLC v.Interwoven, 874 F. Supp. 2d 56, 60 (D.P.R. 2012) (citing Marcinkowska v. IMG Worldwide, Inc., 342 Fed. Appx. 632, 635 (Fed. Cir. 2009)).

The Due Process Clause of the US Constitution requires that for Puerto Rico to exercise jurisdiction over an out-of-state defendant the defendant must have sufficient "minimum contacts" with Puerto Rico such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. Estate of Rosario, 2015 WL 3764512 *5 (citing International Shoe, 326 U.S. at 316); Adams v. Adams, 601 F. 3d 1, 5 (1st Cir. 2010); Equipo de Baloncesto Capitanes de Arecibo, Inc. v. Premier

Basketball League, Inc., 706 F. Supp. 2d 195, 198 (D.P.R. 2010). The Due Process analysis is a two-pronged test. The Court must (i) determine whether the defendant has sufficient "minimum contacts" with the forum, and (ii)ensure that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." International Shoe, 326 U.S. at 316. In turn, "[p]ersonal jurisdiction comes in two forms: general and specific." Ingeniador, 874 F. Supp. 2d at 60 (quoting Nuance Commc'ns v. Abbyy Software House, 626 F. 3d 1222, 1230 (Fed.Cir. 2010)); see also, Muñoz-Rivera v. Treasure Island, LLC, Civil No. 11-1799 (JAG), 2012 WL 1867107 *2 (D.P.R. May 22, 2012).

A Court may only assert general jurisdiction over an out-of-state defendant when its ties or contacts with the forum are "continuous and systematic," so that jurisdiction may be exercised even though the contacts are unrelated to the cause of action. Helicopteros Nacionales de Colombia,S.A. v. Hall, 466 U.S. 408, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)); see also, Harlow v. Children's Hosp., 432 F. 3d 50, 57 (1st Cir. 2005). It is a stringent standard, and one that is rarely met. Harlow, 432 F. 3d at 64.

In the absence of general jurisdiction, this Court's jurisdictional power is contingent on the existence of specific jurisdiction. González-Lopez v. CIGNA Insurance Group, 609 F. Supp. 2d 161, 165 (D.P.R. 2008). Specific jurisdiction requires

the Court to evaluate the propriety of specific jurisdiction by applying a three-pronged test: (1) whether the defendant "purposefully directed" its activities at residents of the forum; (2) whether the claims "arises out of or relates to" those activities; and (3) whether the assertion of personal jurisdiction is "reasonable and fair." Ingeniador, 874 F. Supp. 2d at 62.

## B. **Personal jurisdiction over the WBC**

WBC is not subject to general jurisdiction because it has no meaningful contacts with Puerto Rico, let alone the sort of purposeful, "continuous and systematic" contacts required for general jurisdiction. Because Sakae has not met the required prima facie showing of personal jurisdiction, the action should be dismissed based on WBC's lack of minimum contacts with Puerto Rico. Lee v. United Parcel Service, Inc., 731 F. Supp. 2d 194 (D.P.R. 2010) (granting motion to dismiss under Fed. R. Civ. P. 12(b)(2) due to plaintiff's failure to establish personal jurisdiction over the defendant).

## 1. **WBC has no sufficient contacts with Puerto Rico**

As stated above, general jurisdiction exists "when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." González v. Motion Powerboats, Inc., 334 F. Supp. 2d 98 (D.P.R. 2004). This requires that a defendant have continuous and

systematic contacts with the forum state that are so extensive as to render them essentially at home, regardless of where the cause of action arose. Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011). The analysis is similar for both individuals and entities.

WBC has no presence in Puerto Rico. WBC is incorporated in Norway and not registered to conduct business in Puerto Rico. See Exhibit I, Alan Curran's Unsworn Statement Under Penalty of Perjury[3]. It has no parents, subsidiaries, affiliates, intermediaries, resellers, sales agents, or the like located or doing business in Puerto Rico. It does not maintain and has never had offices or business locations, any business operations, or any employees in Puerto Rico. Id. It has no telephone number, mailing address, bank account, or property in Puerto Rico. Id. WBC does not design, manufacture, or advertise in Puerto Rico. Id. In addition, WBC does not own, rent, lease, or possess any real or personal property in Puerto Rico. WBC does not, and has never, paid any income taxes, payroll taxes, real estate taxes, or personal property taxes to any taxing authority in Puerto Rico. It has no other lawsuits pending in Puerto Rico. Id. WBC has no

---

[3] In reviewing a motion to dismiss based on lack of jurisdiction, the court may consider matters outside the pleadings. Rong v. Liaoning Provincial Gov't, 362 F. Supp. 2d 83, 90 (D.D.C. 2005); Artis v. Greenspan, 223 F. Supp. 2d 149, 152 n. 1 (D.D.C. 2002). Where a party files a motion to dismiss for lack of jurisdiction, the court may consider matters outside the pleadings. Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002)

relationship, contacts, or business of any kind in Puerto Rico, whether personally or through any sales agent. Id.

Puerto Rico is not WBC's' "home." Accordingly, WBC is not subject to this Court's general jurisdiction. <u>Sakae has failed to allege any basis for this Court to exercise personal jurisdiction over the WBC and failed to allege sufficient facts to support jurisdiction over WBC</u>.

### 3. **WBC has no sufficient contacts with Puerto Rico to support the exercise of specific jurisdiction.**

It is well-settled that a federal court may assert specific jurisdiction over a defendant only if doing so comports with both the forum's long-arm statute and the Due Process Clause of the United States Constitution. Carreras, 660 F. 3d at 552. This analysis has two prongs: (i) whether the forum has a long-arm statute that applies; and (ii) whether the defendant has the requisite minimum contacts with the forum such that allowing the defendant to be sued in the forum does not offend "traditional notions of fair play and substantial justice." Rivera-Olivera v. Antares Oil Servs., LLC, 957 F. Supp. 2d 119, 124 (D.P.R. 2013). Since the long-arm statute provides personal jurisdiction to the full extent of constitutional authority, the next step is to analyze this under the due process or minimum contacts provisions. Rivera-Olivera, 957 F. Supp. 2d at 124. Nonetheless, "[t]he two modes of analysis merge into one because the reach of Puerto Rico's

long-arm statute is coextensive with the reach of the Due Process Clause." *Id*.

The constitutional test for determining specific jurisdiction has three distinct components: (1) relatedness, (2) purposeful availment (sometimes called 'minimum contacts'), and (3) reasonableness." Estate of Rosario, 2015 WL 3764515 *6 (citing Daynard, 290 F. 3d at 60). Adelson v. Hanabel, 652 F. 3d 75, 80-81 (1st Cir. 2011)). Accordingly, an affirmative finding on each of these elements is required to support a finding of jurisdiction. Negrón-Torres, 478 F. 3d at 24. To support specific jurisdiction, all three elements are required. Phillips Exeter Academy v. Howard Phillips Fund, 196 F. 3d 284, 288 (1st Cir. 1999).

In the instant case, the relatedness, purposeful availment, and reasonableness prongs are not met, and, therefore, specific jurisdiction over WBC is lacking.

**(i) Relatedness.**

Relatedness deals with the question of whether the suit in question arises out of the defendant's contacts with the forum state. Adelson, 652 F. 3d at 81. To satisfy the relatedness prong, "the action must directly arise out of the specific contacts between the defendant and the forum state." *See Sawtelle v. Farrell*, 70 F.3d 1381, 1389 (1st Cir. 1995). Courts "ask whether the claim that undergirds the litigation directly relates to or arises out of the defendant's contacts with the forum." *Phillips*

*Exeter Academy*, 196 F. 3d at 288. The relatedness test is a relatively flexible and relaxed standard. *Astro-Med, Inc.,* 591 F.3d at 9 (citing *Pritzker*, 42 F.3d at 61). However, it is not " 'an open door.' " *Vargas-Santos v. Sam's West, Inc.,* Civil No. 20-1641 (GAG), 2021 WL 4768387, at *4 (D.P.R. Oct. 12, 2021) (citing *Harlow*, 432 F.3d at 61). A plaintiff must show that there exists a "material connection" between the claim and the defendant's forum-state contacts. *Id.*<u>Hynes v. Forde & O'Meara LLP</u>, No. CV 23-1140 (SCC-MDM), 2024 WL 3360377, at *7 (D.P.R. Mar. 15, 2024), <u>report and recommendation adopted,</u> No. CV 23-1140 (SCC), 2024 WL 3360378 (D.P.R. Mar. 26, 2024)

Courts have determined that the relatedness analysis is different for torts and contract cases. To demonstrate relatedness for tort claims, a plaintiff "must show a nexus between his claim and the defendants' forum-based activities," Rivera-Rodríguez v. Allscripts Healthcare Sols., Inc., 43 F.4th 150, 160 (1st Cir. 2022), such that the "plaintiff's claims ... arise out of or relate to the defendant[s'] contacts with the forum," id. (quoting Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., --- U.S. ----, 141 S. Ct. 1017, 1025, 209 L.Ed.2d 225 (2021)). Cappello v. Rest. Depot, LLC, 89 F.4th 238, 245 (1st Cir. 2023). For contract-based claims, a plaintiff must show "the defendant's activity in the forum state was instrumental either in the formation of the contract or its breach." Vapotherm ,

Inc. v. Santiago, 38 F.4th 258, 259 (1st Cir. 2022) (quoting Adelson, 510 F.3d at 49

The instant case presents a difficult situation. Are Sakae's claims against the appearing parties based on torts or contracts? It is difficult to say. The appearing parties did not execute a contract with Sakae. As to a tort claim, Sakae operated the Vessel, and the Plaintiffs own and operate the docking facilities.

The appearing parties concede that they contracted with a Puerto Rico resident (PAG). However, that single fact is not sufficient to determine relatedness. WBC has no other contact in Puerto Rico; the contract with PAG was executed with an understanding that all controversies would be resolved by arbitration in London. We submit that the relatedness prong is not met. There is no allegation, nor could there be, that WBC had any meaningful contacts in Puerto Rico, let alone any contact that would form a nexus with Puerto Rico.

**(ii) Purposeful availment.**

The second prong is that a defendant must "purposely avail itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Cossaboon v. Main Med. Ctr., 600 F. 3d 25, 32 (1st Cir. 2010); Carreras, 660 F. 3d at 555; Estate of Rosario, 2015 WL 3764515 *6. Utilizing the often-cited language of International Shoe and World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.

Ct. 559, 62 L.Ed.2d 490 (1980), the defendant engages in purposeful acts such that it "should reasonably anticipate being haled into court there." *Id*. To satisfy this prong, a defendant must engage in purposeful acts, not have random or fortuitous contacts. *Id*. Similarly, the "unilateral activity of another party or a third person" will not sustain this prong. *Id* (citing Burger King, 471 U.S. at 475). To sustain a finding of purposeful availment, this Court would have to find that the WBC's actions were such that it was foreseeable that it could be haled into this Court for its actions. Rodríguez v. Fullerton Tires Corp., 937 F. Supp. 122, 128 (D.P.R. 1996), affirmed 115 F. 3d 81 (1st Cir. 1997).

Here, there were no contacts, let alone purposeful ones. WBC does no business and has no presence in Puerto Rico. Similarly, WBC did not perform acts relative to any claims raised in the complaint or crossclaim. It is difficult to surmise how WBC could have availed itself of conducting its activities here when it did not operate the vessel or the terminal, and the contract that WBC had with PAG demanded all controversies to be resolved out of Puerto Rico.

This lack of contacts with Puerto Rico demonstrates that WBC has not purposefully directed its activities to this forum or availed itself of the benefits and protections of Puerto Rico law. Moreover, with the arbitrations and forum selection clause, WBC could not have reasonably foreseen being hauled into court in

Puerto Rico. Consequently, this Court should conclude that the purposeful availment prong has not been met.

**(iii) Reasonableness.**

Having failed the first and second prongs of the test, there should be no need to delve into the arguments concerning the reasonableness prong. Canatello, 2013 WL 4546017 *4 (citing Swiss Am. Bank, 274 F. 3d 676) ("[i]f the plaintiff fails to make a strong showing with respect to the first two prongs, then the exercise of personal jurisdiction is more likely to be found unreasonable under the third prong.")).

Forcing WBC to defend this Crosclaim in Puerto Rico would be unjust and unreasonable. If the Court were to find that the first two prongs are met, which is a finding not supported on this record, the Court must then decide, considering the overall situation here, whether it is reasonable to force the non-resident cross defendnat to have to defend themselves from a suit in this forum. This overall view has been described as "Gestalt factors." *See*, e.g. Lee, 731 F. Supp. 2d at 199 (citing Cossaboon, 600 F. 3d at 33). Gestalt factors include: (i) determining the burden to the defendant of having to appear in a foreign forum; (ii) the local forum's interest in adjudicating the dispute; (iii) plaintiffs' interests in obtaining effective and convenient relief; (iv) the interests of the judicial system for an efficient resolution; and (v) the common interests of all sovereigns in promoting substantive

social policies. Estate of Rosario, 2015 WL 3764515 *8 (citing Burger King, 471 U.S. at 477); Cossaboon, 600 F. 3d at 33 n. 3 (citing Harlow, 432 F. 3d

at 67).

This Court has stated that "[i]n assessing the reasonableness prong, the First Circuit Court of Appeals has adopted a sliding scale approach: the weaker the plaintiff's showing on the relatedness and purposeful availment prong, the less the defendant must show in terms of reasonableness." Estate of Rosario, 2015 WL 3764515 *8. Here, like in Estate Rosario, "[g]iven that the plaintiff's showing of relatedness and purposeful availment was not met, the defendant's hurdle to show unreasonableness to defeat jurisdiction is significantly lower." *Id*.

In the case at hand, the Gestalt factors dictate a finding of no jurisdiction. First, the burden for defendants to have to appear in Puerto Rico is high. WBC, who is from Norway, performed no acts or omissions which would have led them to believe that they would be sued, much less appear, in Puerto Rico at all. To subject it to having to defend itself from this Crossclaim, thousands of miles away from its home base, would pose an enormous burden. Without doubt, coming to Puerto Rico would represent a special and unusual burden when they only agree to dispute any controversy in London. Moreover, Sakae will not be deprived of pursuing its defenses against the Plaintiffs in Puerto Rico.

**C. Alternatively, this Court should dismiss the *Complaint* (Docket No. 7) for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).**

Fed. R. Civ. P. 12(b)(6) allows a complaint to be dismissed for "failure to state a claim upon which relief can be granted." When ruling on a motion to dismiss under this rule, courts must determine whether "*all* the facts alleged [in the complaint], when viewed in the light most favorable to the plaintiffs, render the plaintiff's entitlement to relief plausible." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 14 (1st Cir. 2011). This requires treating "any non-conclusory factual allegations in the complaint as true." Nieto-Vicenty v. Valledor, 984 F. Supp. 2d 17, 20 (D.P.R. 2013). Courts may also consider: "(a) 'implications from documents' attached to or fairly 'incorporated into the complaint,'(b) 'facts' susceptible to 'judicial notice,' and (c) 'concessions' in plaintiff's 'response to the motion to dismiss.'" Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55–56 (1st Cir. 2012) (quoting Arturet–Vélez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 13 n. 2 (1st Cir. 2005)). Diaz v. Gazmey Santiago, No. CV 18-1779 (RAM), 2020 WL 1042041, at *2 (D.P.R. Mar. 3, 2020).

The First Circuit established a two-prong test to evaluate "plausibility" under Fed. R. Civ. P 12(b)(6). See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (discussing Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct.

1955, 167 L.Ed.2d 929 (2007)). In the first part of the test, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Schatz c. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678-79, 129 S.Ct. 1937.

In the second part of the test, the court must then "take the complaint's well-[pleaded] (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Schatz, 669 F.3d at 55. Plausible "means something more than merely possible." Id. (citing Iqbal, 556 U.S. at 678-79, 129 S.Ct. 1937). To survive a Rule 12(b)(6) motion, a plaintiff must allege more than a mere "formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555, 127 S.Ct. 1955. Ryan McCurley v. Citigroup Glob. Markets Holdings Inc., No. CV 22-1031 (ADC), 2023 WL 2652623, at *1 (D.P.R. Mar. 27, 2023)

Cross-claimant Sake claims that WBC owes it a "warranty of providing a Safe-Berth/Safe Port" as they are a "third-party beneficiary under the Athos I Safe Berth and Safe Port Warranty Rule and the safe port/safe berth clauses of the Sub Charter Parties between Western Bulk and Berge Bulk Limited Bermuda and/or

Berge Scafell Pike Company Inc…. They also claim that "Sakae is a third-party beneficiary under the Athos I Safe Berth and Safe Port Warranty Rule and the safe port/safe berth clauses of the Sub Charter Party between Western Bulk and Pan American Grain and that by instructing the M/V BERGE SCAFELL PIKE to berth at the port facilities of Pan American Grain in San Juan…, Puerto Rico Western Bulk, its agents or representatives as subcharterers of the MV BERGE SCAFELL PIKE, provided SAKAE a warranty that the Pan American Grain port facilities were a safe port and safe berth. (Docket #44, paragraphs 9, 10, 11, and 12).

What does Sakae mean by it being a "third-party beneficiary"? Simply, it is an admission that Sakae does not have a contract with WBC. Therefore, Sakae has failed to allege any contractual nexus between it and WBC. Sakae also failed to allege that WBC participated in the vessel's navigation, management, and manning. Sakae does not allege that WBC had control over PAG's terminal, the marine tower, or the leg. Sakae does not allege that WBC participated in the shifting maneuvers during which the alleged damages occurred.

In summary, Sakae filed a crossclaim that fails to claim contractual obligations of WBC or any obligations created by acts or omissions (torts). Then, we must ask, what is WBC's legal responsibility towards Sakae?

Sakae is well aware that it controlled the vessel and that

PAG was responsible for the terminal. Sakae's Crossclaim contains multiple paragraphs describing the accident. In Paragraphs 13 through 18, Sakae describes how the conditions of the PAG's terminal and the instructions received from PAG were the cause of the accident and how the vessel and its crew acted diligently. Sakae's Crossclaim does not and cannot allege that WBC is liable for PAG's acts or omissions. Also, Sakae's answer to PAG's First Amended Complaint is full of defenses blaming PAG for the accident.

Sakae's crossclaim against WBC is not only insufficient but also unnecessary. It is full of unsupported allegations. There is no single allegation that the port or the berth at San Juan was unsafe. In their pleadings, Sakae and PAG blame each other for the accident, including navigation error, mismanagement of the vessel and crew, poor terminal condition, and faulty directions from PAG. WBC is not liable for any of those allegations. Accordingly, the crossclaim must be dismissed.

**WHEREFORE**, WBC respectfully requests that this Honorable Court grant the instant motion and, consequently, dismiss the Crossclaim (Docket No. 44) pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction or, alternatively, pursuant to Fed. R. Civ. P. 12(b)(6) and further relief as the Court may deem just and proper.

**RESPECTFULLY SUBMITTED.**

**I HEREBY CERTIFY:** That on this day, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will notify all attorneys of record of such filing.

In San Juan, Puerto Rico, this 13th day of August 2024.

*s/GIANCARLO FONT*
**GIANCARLO FONT**
**USDC-PR NO. 210612**
Urb. Baldrich
306 Calle Coll y Toste
San Juan, Puerto Rico 00918
*TEL.(787) 622-6999*
*FAX.(787)622-6998*
*gfont@drcprlaw.com*