IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| PAN AMERICAN GRAIN COMPANY INC.; PAN AMERICAN GRAIN MANUFACTURING CO., INC.<br><br>Plaintiff,<br><br>v.<br><br>BERGE BULK SHIPPING PTE. LTD.; WESTERN BULK CARRIERS AS; SAKAE SHIPPING S.A.; THE STANDARD CLUB U.K. LTD; NORTH OF ENGLAND PROTECTION AND INDEMNITY ASSOCIATION LTD.; NORTHSTANDARD LTD.<br><br>Defendants | Civil Case No. 23-cv-1581 (SCC)<br><br><br><br>IN ADMIRALTY |

**BERGE BULK SHIPPING PTE, LTD'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE COURT:

COMES NOW Co-defendant Berge Bulk Shipping PTE LTD, ("BERGE"), through the undersigned counsel and respectfully requests that this Honorable Court enter summary judgment dismissing the Amended Complaint (Docket No. 7), pursuant to Fed. R. Civ. P. 56. In support thereof, BERGE states and prays as follows:

I.   **INTRODUCTION**

This case arises from the alleged allision of the M/V BERGE SCAFELL PIKE (henceforth, the "Vessel") with a certain marine tower owned by plaintiffs, Pan American Grain Manufacturing Co., Inc. and its subsidiary, Pan American Grain Company, Inc. (collectively, "PAG" or "Plaintiffs") as part of their marine terminal in Guaynabo, Puerto Rico. *See* Docket No. 7. According to Plaintiffs, the allision and the resulting damages were caused solely and exclusively by the "fault and negligence" of the defendants, to wit: (1) Sakae Shipping S.A. ("Sakae Shipping"), the "registered owner of the Vessel"; (2) BERGE, the "charterer and/or disponent owner of the Vessel"; (3) Western Bulk Carriers AS ("Western Bulk"); and (4) Sakae Shipping and Western

1

Bulk's insurers, The Standard U.K. Club Ltd. (the "Standard Club"), North of England P&I Assoc. Ltd. ("North"), and Northstandard Ltd.  See Docket No. 7 at ¶¶ 4-9.

Plaintiffs ignore that, as a matter of admiralty law, a time charterer or disponent owner assumes no liability for a vessel's unseaworthiness or the negligence of its crew unless it is shown that (1) the parties to the charter intended otherwise; or (2) that the disponent owner was independently negligent, and it was such independent negligence that caused the damage in question. As BERGE's Statement of Uncontested Material Facts ("SUMF") and the documents attached thereto demonstrate, there is no genuine dispute that, pursuant to a certain New York Produce Exchange-approved ("NYPE") Time Charter dated November 1, 2013 (the "Head Charterparty"), Sakae Shipping retained its duties as owner of the Vessel. To that end, the Head Charterparty clearly and unambiguously stipulates that *nothing* stated therein may be construed as a demise of the Vessel to BERGE, and that Sakae Shipping, as owner, remains responsible for all matters involving the Vessel, including its navigation, seaworthiness and crew. *See* SUMF at ¶ 4. Thus, BERGE was neither responsible for nor had any control over the "shifting maneuver" that supposedly resulted from the allision and is not liable for the damages claimed by Plaintiffs. As a result, Plaintiffs have no valid cause of action against BERGE and the complaint should be dismissed with prejudice.

Therefore, summary judgment is appropriate in this case and should be entered in BERGE's favor, dismissing Plaintiffs' First Amended Complaint.

## II.     APPLICABLE LAW

**A.     Summary Judgment Standard**

Under Fed. R. Civ. P. 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Aponte-Santiago v. López-Rivera, 957 F.2d 40 (1st Cir. 1992). An issue of fact is "genuine" if "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving

party;" a fact is "material" if it is "one susceptible of altering the outcome of the litigation [under the applicable law]." Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 352 (1st Cir. 1992). Accordingly, the moving party bears the two-fold burden of showing that "no genuine issue exists as to any material facts," and that the movant is "entitled to judgment as a matter of law." Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

If the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, then the moving party is entitled to judgment as a matter of law. *See* Celotex Corp. v. Catrett, 477 U.S. at 323. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

In order to rebut the movant's showing, the opposing party must cite "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). In other words, a "party cannot successfully oppose a motion for summary judgement by resting 'upon mere allegations or denials of [her] pleading.'" López Hernández v. Terumo Puerto Rico LLC, 64 F.4th 22, 26 (1st Cir. 2023) (quoting Garmon v. Nat'l R.R. Passenger Corp., 844 F.3d 307, 312 (1st Cir. 2016)). "The nonmoving party must instead marshal sufficient evidence to show that a genuine issue of material fact exists." *Id.*

The United States Supreme Court has stated that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." Celotex, 477 U.S. at 323-24. As a matter of law "Rule 56 does not require the moving party to *negate* the

3

elements of the nonmoving party's case; to the contrary, 'regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied'." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990) (internal citations omitted); *see also* López Hernández, 64 F.4th at 26 (emphasizing that the United States District Court for the District of Puerto Rico's Local Rule 56, like Federal Rule of Civil Procedure 56 itself, "makes clear that its focus is on facts, not speculation or argumentation") (quoting Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56-57 (1st Cir. 2011)) (emphasis in original); Al-Zubaidy v. TEK Indus., Inc., 406 F.3d 1030, 1036 (8th Cir. 2005) ("[e]vidence, not contentions, avoids summary judgment.") (*quoting* Mayer v. Nextel W. Corp., 318 F.3d 803, 809 (8th Cir. 2003)).

**B.    Time Charters and Disponent Owners under Admiralty Law**

Under admiralty law, a "charter party" is "a contract by which an entire ship or some principal part thereof is let to a merchant.... The term charter party ... refers to the document in which the terms and conditions of the lease of a vessel by an owner to a charterer are set out." Crystal Pool AS v. Trefin Tankers Ltd., Case No. 12-Civ.-9417 (RA), 2014 WL 1883506 at *1 n. 1 (S.D.N.Y. May 9, 2014) (quoting Great Circle Lines, Ltd. v. Matheson & Co., Ltd., 681 F.2d 121, 124 (2d Cir. 1982)); *see also*, Weeks Marine, Inc. v. Hanjin Shipping, Case No. Civ. 04-1703 (DRD), 2005 WL 1638148 at *3 n. 6 (D.N.J. July 12, 2005) ("The term 'charter party,' often shortened to 'charter,' designates the document in which are set forth the arrangements and contractual engagements entered into when one person (the 'charterer') takes over the use of the whole of a ship belonging to another (the 'owner').") (quoting G. Gilmore & C. Black, *The Law of Admiralty*, § 4-1 at 193 (2d ed. 1975)).

A time charter, generally defined, is a "charter for a specified period, rather than for a specific task or voyage; a charter under which the shipowner continues to manage and control the vessel, but the charterer designates the ports of call and the cargo carried." Tidewater Inc. v.

4

U.S., 565 F.3d 299, 303 (5th Cir. 2009) (internal citations omitted). In the traditional time-charter arrangement, "the charterer directs the commercial activities of the boat, but 'the owner's people continue to navigate and manage the vessel... The time charter is used where the charterer's affairs make it desirable for him to have tonnage under his control for a period of time, **without undertaking the responsibilities of ship navigation and management or the long-term financial commitments of vessel ownership**." Weeks Marine, Inc., 2005 WL 1638148 at *3 (quoting Kerr-McGee Corp. v. Ma-Ju Marine Services, Inc., 830 F.2d 1332, 1340-41 (5th Cir. 1987)) (emphasis ours).

Ordinarily, "when there is a time charter party between a vessel owner and another entity, the latter is regarded as a 'disponent owner.'" Dun Shipping Ltd. v. Amerada Hess Shipping Corp., Case No. 01 Civ.2088(RMB)(KNF), 2005 WL 7870783 at *4 (S.D.N.Y. October 5, 2005), report and recommendation adopted 2006 WL 2291024 (S.D.N.Y. August 3, 2006). "[A] disponent owner is one who rents a vessel from the owners under a time charter and then acts as a contract carrier undertaking the transportation of goods." Fairmont Shipping (H.K.), Ltd. v. Primary Indus., No. 86 Civ. 3668, 1987 WL 9433, at *2 n.4 (S.D.N.Y. Apr. 7, 1987). A "disponent owner" does not hold legal title to a vessel but, for purposes of the charter party, acts as if he does and may sub-charter her voyage. *See* Dun Shipping Ltd., 2005 WL 7870783 at *4. "It is common practice in the shipping industry to describe a disponent owner in a sub-charter merely as 'owner.'" Dun Shipping Ltd., *supra*, at *4 (quoting Michael Wilford, et al., *Time Charters* 71 (4th ed. 1995)).

A disponent owner under a time charter does not become the *de facto* owner of the vessel. A time charter is not a demise of the ship, and the navigation of the ship during the time of the charter remains in the hands of the actual owner. *See* Weeks Marine, Inc., 2005 WL 1638148 at *3 (quoting Luckenbach v. Insular Line, 186 F. 327, 328 (2nd Cir. 1911)). Thus, because the time-charter merely contracts for a specific service of the vessel such as the transport of goods, which is rendered by the owner's ship, captain, and crew, the disponent owner, as time charterer,

is not subject to the traditional owner's maritime liability. Id. (quoting <u>Matute v. Lloyd Bermuda Lines, Ltd.</u>, 931 F.2d 231, 235 (3rd Cir. 1991)).

There are two exceptions to the general rule that liability for the vessel's seaworthiness, navigation and/or management does not extend to the time charterer. *First*, the parties to a charter can contractually agree to reallocate the traditional duties between the time charterer and the vessel owner. *See, e.g.*, <u>Ker-McGee Corp.</u>, 830 F.2d at 1341 (Explaining that a time-charterer's "duties are determined by tradition and agreement"). *Second*, a time charterer could be held responsible for the damage caused by its *own* independent negligence. *See* <u>Weeks Marine, Inc.</u>, 2005 WL 1638148 at *5.

### III.   ARGUMENT

BERGE acted at all times relevant to the First Amended Complaint as the Vessel's disponent owner and time charterer pursuant to the Head Charterparty, under which the Vessel's owner, Sakae Shipping, remained responsible for all matters involving the Vessel, including its navigation, seaworthiness and crew. Specifically, pursuant to the Head Charterparty dated November 1, 2013, originally executed between Shoei Kisen, Kaisha, Ltd. ("Shoei Kisen"), as owner of the then to be-constructed vessel, MV Berge Scafell Pike, and Berge Bulk Ltd. Bermuda, as charterers, the former agreed to let the latter hire the Vessel, from the time of delivery, for "7 years plus/minus 30 days in Charterers' option plus 1 plus 1 plus 1 optional year." *See* SUMF at ¶ 2. In accordance with the Head Charterparty, Berge Bulk Ltd. Bermuda and its nominees became the Vessel's time-charterers and disponent owners.

The Head Charterparty makes clear that there has not been a reallocation of the traditional duties between the Vessel's time charterer and owner. To the contrary, Clause 26 of the Head Charterparty provides that:

> 26. Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The owners to remain responsible for **the navigation of the vessel**, ***her seaworthiness and maintenance, acts of pilots or tugboats***, **insurance, crew, and all other matters, same as when trading for their own account**.

6

SUMF at ¶ 4 (emphasis added).

"Under this provision the owner of the vessel is responsible for the navigation of the vessel." Weeks Marine, Inc., 2005 WL 1638148 at * 3 (interpreting near identical language in a NYPE-approved time charter). Thus, as a disponent owner and pursuant to the terms of the Head Charterparty, Berge Bulk Lt. Bermuda and its nominees "assume[d] no liability for negligence of the crew or unseaworthiness of the vessel absent a showing that the parties to the charter intended otherwise." *Id.* at *2 (quoting Mallard v. Aluminum Co. of Canada, Ltd., 634 F.2d 236, 242 n. 5 (5th Cir. 1981)).

On February 6, 2017, the delivery time of the Vessel, as set in the Head Charterparty, was changed to "between 1st January 2020 and 30th June 2020." SUMF at ¶ 7. The Vessel was delivered on March 18, 2020. SUMF at ¶ 11. Accordingly, the Head Charterparty, which has a minimum term of seven years (SUMF at ¶ 2), was in effect on November 20, 2022. That is, when the allision between the Vessel and PAG's Marine Tower is alleged to have occurred. SUMF at ¶ 19.

Through a novation of the Head Charterparty dated February 28, 2018, Sakae Shipping replaced Shoei Kisen as the owner of the Vessel, thereby assuming all obligations that were formerly assigned to Shoei Kisen. *See* SUMF at ¶ 8-10. From that date onwards, Sakae Shipping is considered the owner of the Vessel for purposes of the Head Charterparty. *See* SUMF at ¶ 9. When the allision between the Vessel and PAG's marine tower occurred on November 20, 2022, Sakae Shipping was the owner of the Vessel and was, thus, responsible for the "navigation of the vessel, her seaworthiness and maintenance, acts of pilots or tugboats, insurance, crew, and all other matters, same as when trading for their own account." SUMF at ¶ 4.

On December 31, 2014, Berge Scafell Pike Company, Inc. was nominated by Berge Bulk Ltd. Bermuda as the "new Charterer for the due performance of all the obligations under the" Head Charterparty. SUMF at ¶ 5. In turn, Berge Scafell Pike Company, Inc. chartered out the Vessel to BERGE as charterer. *See* SUMF at ¶ 12. Thus, when BERGE sub-chartered the Vessel

7

to Western Bulk under a voyage-charter, it did so in its capacity as disponent owner. *See* SUMF at ¶¶ 14-16.

That BERGE was merely the Vessel's disponent owner, not its head-owner, was made known to Plaintiffs when Western Bulk nominated the Vessel as intended performer of the *North American Grain Charterparty* (the "PAG Charterparty"), entered between Western Bulk and Pan American Grain on August 4, 2022. SUMF at ¶¶ 13-14, 17. This is made clear in the First Addendum to the PAG Charterparty dated August 23, 2022, through which Plaintiffs were notified that (1) the Head Owner of the Vessel was Sakae Shipping, and (2) BERGE was one of the Vessel's disponent owners. SUMF at ¶ 17.

As disponent owner of the Vessel when the alleged allision occurred on November 20, 2022, BERGE cannot be held contractually or legally liable for "the navigation of the vessel, her seaworthiness and maintenance, acts of pilots or tugboats, insurance, crew, and all other matters." SUMF at ¶ 4. The alleged allision object of the First Amended Complaint occurred while the Vessel was "executing a shifting maneuver …" Docket No. 7 at ¶ 13. This constitutes "navigation" within the meaning of the rule. *See, e.g.*, Weeks Marine, Inc., 2005 WL 1638148 at *3 ("Since the incident occurred while the [vessel] was *moving* from one dock to another, this constitutes 'navigation' within the meaning of the rule"); Delaware River Terminals, Inc. v. M/S Ancora, 253 F.Supp. 884, 886 (E.D. Pa. 1966) (A time charter is not responsible for navigation of the ship, "and docking is part of navigation."); Luckenback v. Insular Line, 186 F. 327, 328 (2d Cir. 1911) ("It has been repeatedly held that this form of time charter is not a demise of the ship ….the navigation of the ship during the time of the charter is in the hands of the owner. We consider the docking of the vessel as part of her navigation").

According to the allegations in the First Amended Complaint, the alleged allision and supposed resulting damages were caused because: (a) the Vessel was unseaworthy; (b) the Vessel was manned by incompetent, improperly trained persons who were not attentive to their duties; (c) the Vessel was negligently operated; and (d) the Vessel violated the applicable Rules

8

of the Road and standards of good seamanship. *See* Docket No. 7 at ¶ 14. These purported negligent acts or omissions are directly related to responsibilities which, under the Head Charterparty and maritime law, remained with the owner, i.e., Sakae Shipping, and for which BERGE, as disponent owner, is not liable. *See* Klishewich v. Mediterranean Agencies, Inc., 302 F.Supp. 712, 713 (E.D.N.Y. 1969) ("Time charterer assumes no liability flowing from unseaworthiness of vessel or negligence of crew unless it is shown that the parties to the charter intended otherwise"); Kerr-McGee Corp., 830 F.2d at 1341 ("It is well-established that the time charter[er] is not responsible for navigational errors committed by the pilot"); Oil Co. v. Bonanza Corp., 706 F.2d 1365, 1375 (5th Cir. 1983) ("A time charterer who does not control the operation or navigation of the chartered vessel is not responsible for the consequence of the vessel owner's negligence").

## IV.  CONCLUSION

It is an uncontested fact that, at all times relevant to the First Amended Complaint, BERGE was one of the Vessel's disponent owners. Pursuant to the Head Charterparty and maritime law, BERGE is not responsible for the navigation of the Vessel, her seaworthiness and/or any alleged acts or omissions of her crew. Accordingly, BERGE cannot be held liable for the alleged allision that took place on November 20, 2022 and the Court should enter summary judgment dismissing with prejudice the First Amended Complaint against BERGE.

WHEREFORE, Berge Bulk Shipping PTE. LTD. respectfully requests that the Court enter summary judgment in its favor, dismissing Plaintiffs' First Amended Complaint with prejudice, and imposing the payment of attorney's fees in its favor due to the patently frivolous claim filed by Plaintiffs against it.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 20th day of September 2024.

CERTIFICATE OF SERVICE: It is hereby certified that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record which are CM/ECF system participants at their corresponding e-mail addresses and which, pursuant to Local Civil Rule 5.1(b)(2), constitutes the equivalent service.

**McCONNELL VALDÉS LLC**
Attorneys for Berge Bulk Shipping PTE LTD
P.O. Box 364225
San Juan, PR 00936-4225
Tel: 787-250-2631 / 787-250-5628
Fax: 787-759-8282

s/ *Henry O. Freese Souffront*
Henry O. Freese Souffront
USDC-PR No. 215502
hf@mcvpr.com

s/*Javier A. Aquino-Vidal*
Javier A. Aquino-Vidal
USDC-PR No. 308414
jav@mcvpr.com